UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERMAN STOKES,                          Case No. 16-13516

     Plaintiff                          Stephanie Dawkins Davis
v.                                       United States Magistrate Judge

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant(s).
_____/

**OPINION AND ORDER**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 15, 18)**

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On September 29, 2016, plaintiff filed the instant suit seeking judicial

review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was

referred to the undersigned for the purpose of reviewing the Commissioner's

decision denying plaintiff's claim for disability benefits.  (Dkt. 3).  The parties

consented to the undersigned magistrate judge's jurisdiction.  (Dkt. 12, 13).  This

matter is before the Court on cross-motions for summary judgment.  (Dkt. 15, 18).

Plaintiff also filed a reply in support of her motion.  (Dkt. 19).  Pursuant to notice,

the Court held a hearing on the parties' cross-motions on December 19, 2017. (Dkt. 20).

## B.    Administrative Proceedings

Plaintiff filed the instant claims for period of disability, disability insurance benefits, and supplemental security income on July 13, 2011, alleging that he became disabled on June 5, 2005. (Tr. 40). The claims were initially disapproved by the Commissioner on November 18, 2011. *Id.* Plaintiff requested a hearing and on February 20, 2013, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Gregory Holiday, who considered the case de novo. (Tr. 95-135). In a decision dated April 15, 2013, ALJ Holiday issued a partially favorable decision, finding plaintiff to be disabled as of August 12, 2012, the date when his age category changed. (Tr. 35-56). Plaintiff requested a review of this decision and on October 16, 2014, the Appeals Council reviewed the decision and remanded it back to the ALJ to (1) obtain additional medical evidence, including a consultative examination and a medical source statement about what plaintiff can do despite his impairments, (2) give further consideration to plaintiff's RFC, and (3) obtain further vocational expert testimony. (Tr. 32-34). Plaintiff appeared at a hearing on March 12, 2015 with his counsel before ALJ Ena Weathers. (Tr. 62-94). ALJ Weathers issued the second decision on April 20, 2015, finding that plaintiff was not disabled at any time. (Tr. 8-25). The ALJ's decision became the final decision

of the Commissioner when, after the review of additional exhibits,[1] the Appeals

Council denied plaintiff's request for review.  (Tr. 1-5); *Wilson v. Comm'r of Soc.*

*Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the Court **DENIES** plaintiff's motion for

summary judgment, **GRANTS** defendant's motion for summary judgment, and

**AFFIRMS** the findings of the Commissioner.

## II.    FACTUAL BACKGROUND

Plaintiff was born in 1962 and was 49 years old on the alleged onset date.

(Tr. 24).  According to the second decision, plaintiff has past relevant work as a

detention facility officer and a mail clerk.  (Tr. 14).  As explained more fully in the

first decision, his work as a corrections officer was medium, semi-skilled work and

his work as a mail clerk was light and unskilled.  (Tr. 42).  Additional past work

was noted in the first decision, which was not discussed in the second decision; the

reasons are not clear.  *Id.*

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

In considering plaintiff's claim, the ALJ applied the five-step disability analysis and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 14). At step two, the ALJ found that plaintiff's osteoarthritis of the bilateral shoulders, status-post total left shoulder arthroplasty, glaucoma and presbyopia of the right eye, and obesity were "severe." (Tr. 14). At step three, the ALJ found no evidence that plaintiff's individual or combination of impairments met or equaled one of the listings in the regulations. (Tr. 15). The ALJ concluded that plaintiff had the residual functional capacity to perform a limited range of light work as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is unable to climb ladders, ropes, or scaffolds. He is unable to kneel and crawl. The claimant can occasionally climb ramps and stairs. He can occasionally reach overhead bilaterally and frequently finger bilaterally. The claimant cannot perform work that requires fine visual acuity in the right eye (unlimited visual acuity in the left). He must avoid concentrated exposure to hazards, including moving machinery, commercial driving, and work at unprotected heights. The claimant must have the ability to change from standing to a seated position, or vice versa, for 1-2 minutes every 1-2 hours, with no interference with work product. The claimant is limited to tasks without strict production demands.

(Tr. 15). At step four, though not expressly stated, it appears that the ALJ found that plaintiff was unable to perform his past relevant work, given that the ALJ

proceeded to step five. (Tr. 24). At step five, the ALJ denied plaintiff benefits because he found that plaintiff could perform a significant number of jobs available in the national economy. (Tr. 24-25).

## III. DISCUSSION

### A. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.

McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant." *Rogers v.

Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.

Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence."). "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul.

96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*,

245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the

> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

1.    Step Two/Five

Plaintiff first argues that the ALJ's decision at steps two and five is not supported by substantial evidence because she improperly dismissed or ignored plaintiff's testimony about the extent of his limitations, objective medical evidence in the form of diagnostic imaging studies, objective clinical findings on physical examination, and a record of medical treatment that supports additional severe, medically determinable impairments at step two, including osteoarthritis of the bilateral knees, osteoarthritis of the left hip, degenerative arthritis of the cervical spine with radiculopathy into the left upper extremity and obstructive sleep apnea. As a consequence of overlooking the existence and severity of these impairments, plaintiff contends that the ALJ overstated his actual residual functional capacity - finding him capable of performing a range of light exertional work, which requires the capacity for sitting six hours in an 8-hour workday and standing or walking up to six hours in an 8-hour workday as well as lifting, carrying, pushing or pulling up to 20 pounds occasionally and 10 pounds frequently. The ALJ included additional non-exertional limitations in the RFC finding not related to the impairments she overlooked. Nevertheless, the vocational expert was able to cite a significant

number of other jobs an individual such as the claimant could perform. Plaintiff maintains that the ALJ's error in failing to identify and consider all the medically determinable impairments that were severe independently or in combination materially affected the outcome of the case and prejudiced plaintiff.

The Commissioner posits that plaintiff's argument is misguided under *Anthony v. Astrue*, 2008 WL 508008, at **5 (6th Cir. Feb. 22, 2008). Like the adjudicator in *Anthony*, the ALJ here explicitly found that plaintiff had both severe and nonsevere impairments, and according to the Commissioner, this finding "caused the ALJ to consider [plaintiff's] severe and nonsevere impairments in the remaining steps of the sequential analysis." *Id*. As in *Anthony*, "[t]he fact that some of [plaintiff's] impairments were not deemed to be severe at step two [of the sequential analysis] is therefore legally irrelevant." *Id*. According to the Commissioner, the Court's inquiry properly could end at this point. Nevertheless, the Commissioner goes on to argue that the ALJ extensively addressed the evidence of record that was relevant to her finding about plaintiff's residual functional capacity. (Tr. 15-23). The Commissioner points out that even though plaintiff has the burden of proof, he makes no attempt to establish that the ALJ either (1) failed to accurately characterize the facts supporting the grounds for the RFC finding; or (2) was not legally entitled to consider such grounds. Thus, the Commissioner maintains plaintiff has waived any argument that the ALJ's reliance

on any of those grounds constitutes reversible error. Additionally, plaintiff does

not advance – and has therefore waived -- any argument that the disputed

impairments caused any specific, functional, work-related limitations beyond those

set forth in the highly restrictive RFC finding. Thus, even if the ALJ had erred,

plaintiff could not sustain his burden of establishing the error caused him to suffer

any prejudice. Finally, the Commissioner contends that the ALJ explicitly

addressed all of the disputed impairments.[2]

---

[2] *See e.g.*, Tr. 16 (ALJ's statement that Plaintiff "alleges his impairments cause severe, chronic pain in [both of] his . . . knees"); *id.* (ALJ's recitation of evidence about both of plaintiff's knees); Tr. 17 (ALJ's statement that "treating sources diagnosed [plaintiff] with disorders of the . . . knees"); *id.* (ALJ's description of "knee x-rays"); Tr. 18 (ALJ's description of "left knee x-ray"); Tr. 20 (ALJ's statement that plaintiff "had a history of knee surgeries, and x-rays . . . revealed degenerative changes in both knees . . . . However . . . [plaintiff had] only mildly reduced range of motion in [his] knees."); Tr. 19 (ALJ's statement that plaintiff complained of hip pain); id. (ALJ's recitation of evidence that plaintiff had "moderate tenderness to palpation in [his] left hip"); *id.* (ALJ's description of a left hip x-ray); Tr. 20 (ALJ's statement that plaintiff had "reduced range of motion in his left hip"); Tr. 21 (ALJ's statement that plaintiff "was treated for hip pain"); Tr. 16 (ALJ's statement that plaintiff "alleges his impairments cause severe, chronic pain in his . . . neck"); Tr. 17 (ALJ's statement that "treating sources diagnosed [plaintiff] with disorders of the . . . cervical spine"); Tr. 18 (ALJ's statement that one examination revealed "severe tenderness at [plaintiff's] cervical spine"); *id.* (ALJ's description of x-ray of Plaintiff's cervical spine); *id.* (ALJ's statement that plaintiff complained of pain in his neck, including "neck pain radiating into his left arm" [i.e., his left upper extremity]); *id.* (ALJ's statement that plaintiff had normal range of motion in his neck); Tr. 19 (ALJ's statements that plaintiff sometimes endorsed and sometimes denied neck pain); *id.* (ALJ's description of x-ray and MRI of plaintiff's cervical spine); Tr. 20 (ALJ's statement that one examination revealed "cervical tenderness"); *id.* (ALJ's recitation of doctor's statement that "diagnostic tests show[ed] only moderate cervical impairment"); *id.* (ALJ's statement that Plaintiff exhibited "normal range of motion throughout his cervical spine"); Tr. 21 (ALJ's statement that she "considered . . . objective medical evidence of osteoarthritis in [plaintiff's] cervical spine"); *id.* (ALJ's statement that "[t]he totality of evidence demonstrates some limitations in [plaintiff's] residual functional capacity stemming from his neck . . . . [T]he undersigned considered . . . [the] objective medical evidence of osteoarthritis in his cervical spine and right shoulder, including treating source observations of reduced range of motion at these sites. . . . Given the combined effects of mild cervical radiculopathy and shoulder impairments, the undersigned limited [plaintiff's] reaching and manipulative activities, as overexertion could exacerbate [his] pain symptoms."); Tr. 14

In the view of the Court, any purported error at step two (along with any related step five error) is both undeveloped by plaintiff and harmless.  Under the regulations, at Step Two the ALJ must consider whether a claimant's impairment is a medically determinable impairment.  *See* 20 C.F.R. § 404.1520.  A medically determinable impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities, which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  *Jones v. Comm'r of Soc. Sec.*, 2017 WL 540923, at *6 (S.D. Ohio Feb. 10, 2017), *report and recommendation adopted sub nom. Jones v. Berryhill*, 2017 WL 1196179 (S.D. Ohio Mar. 31, 2017) (citing 20 C.F.R. §§ 404.1505, 404.1508, 404.1520(a)(4)(ii) and 404.1527(a)(1)).  "Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source.  We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)."  20 C.F.R. § 404.1521; *see also Tolbert v. Comm'r of Soc. Sec.*, 2012 WL 4176876, at *4 (E.D. Mich. Aug. 27, 2012), *report and recommendation adopted*, 2012 WL 4165649 (E.D. Mich. Sept.

---

(ALJ's statement that the record "reflects treatment for . . . obstructive sleep apnea"); Tr. 22 (ALJ's statement that plaintiff "was diagnosed with moderately severe obstructive sleep apnea . . . . [plaintiff] admitted that he did not use his prescribed CPAP machine [to treat his sleep apnea] because it was uncomfortable. When a claimant alleges a condition severe enough to be disabling, there is a reasonable expectation that the claimant will comply with treatment recommendations; [plaintiff's] failure to do so [here by using his CPAP machine] undermines his allegations of significant limitations stemming from sleep apnea.").

18, 2012) (citing Social Security Ruling 96-4p, 1996 WL 374187 at *1) ("A diagnosis establishes medically determinable impairment only where it is supported by objective medical evidence.").

The ALJ must also consider whether a claimant's medically determinable impairment is a severe impairment, and whether the impairment(s) meet the twelve month durational requirement in 20 C.F.R. § 404.1509. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 188 (6th Cir. 2009). To be classified as severe, an impairment or combination of impairments must significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities, defined in the regulations as "the abilities and aptitudes necessary to do most jobs," include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in routine work settings. An ALJ's failure to find an impairment severe is not reversible error if the ALJ found another impairment severe, and thus continued with the five-step evaluation process. *See e.g.*, *Fisk v. Astrue*, 253 Fed. Appx. 580, 584 (6th Cir. 2007); *Anthony v. Astrue*, 266 Fed.

Appx. 451, 457 (6th Cir. 2008). Here, the ALJ continued with the five step

analysis, having found several of plaintiff's impairments to be severe. And, and as

a discussed by the Commissioner and referenced above (*see* note 2), the ALJ

extensively examined plaintiff's non-severe impairments of osteoarthritis of the

bilateral knees, osteoarthritis of the left hip, degenerative arthritis of the cervical

spine with radiculopathy into the left upper extremity and obstructive sleep apnea.

If any error exists in failing to find the above-referenced impairments to be

severe, it is harmless because plaintiff has pointed to no evidence of functional

limitations caused by plaintiff's arthritis of the knees, left hip, and/or cervical spine

or by obstructive sleep apnea that are greater than or not already accounted for in

the RFC. Consequently, even if the ALJ were to have determined that those

conditions were severe impairments, remand for further analysis would be futile.

*See Easterday v. Comm'r of Soc. Sec.*, 2016 WL 5422101, at *8 (E.D. Mich. Aug.

19, 2016) (finding no reversible error in ALJ's decision that diagnosed depression

was not a medically determinable impairment because the "existence of

a diagnosis [did] not suggest functional limitations. Indeed, plaintiff bears the

burden of proof at step two and has not come forward with any evidence of mental

impairment that is more than a 'slight abnormality that minimally affects work

ability regardless of age, education, and experience.'") (citing *Higgs v. Bowen*, 880

F.2d 860, 862 (6th Cir. 1988)); *see also Landsaw v. Sec'y of Health & Human*

*Servs.*, 803 F.2d 211, 213-214 (6th Cir. 1986) (a diagnosis unaccompanied by supporting clinical data is insufficient to support a finding of a severe impairment). Plaintiff's failure to adduce evidence in the record supporting an RFC with more severe functional limitations resulting from or related to his knee, hip, and neck or his sleep apnea is fatal to his argument.[3] *See Hill v. Comm'r of Soc. Sec.*, 560 Fed. Appx. 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it."); *Townsend v. Astrue*, 2013 WL 687042, at *5 (D. Or. Feb. 25, 2013) (failure to discuss a diagnosis is error, but harmless where record does not reveal any limitations due to the diagnosed condition).

In short, plaintiff has failed to sufficiently develop this issue for review by the Court. Rather, as set forth above, plaintiff merely suggests that the existence of the referenced conditions or diagnoses means that he is more limited than the ALJ found. "[I]ssues adverted to in perfunctory manner, unaccompanied by some effort

---

[3] Dr. Shelby-Lane examined plaintiff and reviewed his entire medical file. (Tr. 1054-1067). She made observations about his hip, back, and neck pain and appears to have expressly considered those conditions in her assessment. *Id*. While she found plaintiff to be more limited in his capacity for work activity than the ALJ found, the ALJ considered her opinion and assessed less weight to her conclusions in this regard. (Tr. 20). Plaintiff does not assert any error regarding the ALJ's assessment of Dr. Shelby-Lane's opinion. Thus, any such claim is waived. *See Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that arguments not raised in a party's opening brief ... are waived.") (citing *Caudill v. Hollan*, 431 F.3d 900, 915 n.13 (6th Cir. 2005)); *see also Nichols v. Comm'r of Soc. Sec.*, 2014 WL 4259445, at *9 (W.D. Mich. 2014) (failure to raise an argument in the initial brief "should end the court's analysis, because issues not presented in the plaintiff's statement of errors are considered waived").

at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted); *see also Marko v. Comm'r of Soc. Sec*., 2017 WL 3116246, at *3 (E.D. Mich. July 21, 2017) (citing *Jones v. Comm'r of Soc. Sec.*, 2013 WL 4748083, at *8 (N.D. Ohio Sept. 4, 2013) ("[I]t is not the Court's function to search the administrative record for evidence to support [Plaintiff's] 'argument' or find law supporting [his or] her claims.  This Court does not conduct a de novo review in social security proceedings, and certainly cannot be expected to craft an argument on [Plaintiff's] behalf.")).  In the Court's view, plaintiff's underdeveloped step two argument is waived and even if there were any error, it is harmless.

### 3.     Medical Expert

Plaintiff also argues that an expert was needed to testify about whether and how the current evidence could be used to infer the presence and severity of a medical impairment, and whether the evidence supports a remote alleged onset date.  For support, plaintiff points to the Administration's Policy and Procedures Manual for SSA-ODAR (HALLEX), providing that use of a medical expert may be appropriate when, (1) there is a remote onset date and little medical evidence relating back to that date or the record is unclear as to when an impairment became

disabling; or (2) the ALJ is unfamiliar with an impairment and has questions about the etiology and course of an impairment or disease and how it might affect a claimant's functional abilities over time. According to plaintiff, the ALJ's failure to acknowledge evidence establishing several impairments and finding them nonsevere[4] suggests the claimant should have used a medical expert. Plaintiff argues that instead of turning to a medical expert, the ALJ improperly relied on layman's knowledge to draw conclusions. He also suggests that consulting a medical expert would have been appropriate since claimant alleges a remote onset date of June 5, 2005, and the date last insured of December 31, 2010 is also remote. According to plaintiff, the ALJ's failure to specify the onset of his impairments as having occurred on or before the DLI is dispositive on the issue of whether he is entitled to disability insurance benefits under Title II of the Social Security Act.[5] Plaintiff asserts that, given the number and complexity of impairments referenced in the record, it was imperative for the ALJ to accurately assess not only their severity but also the onset date(s) of each respective

---

[4] Plaintiff's brief appears to contain typographical errors where it takes issue with "claimant" finding "severe" impairments, as the plaintiff otherwise takes issue with the <u>ALJ</u> finding the subject impairments to be "nonsevere." (Dkt. 15, Pg ID 1182).

[5] Notably, plaintiff argues that, "…<u>claimant's</u> failure to acknowledge evidence establishing several impairments and finding them severe suggests the <u>claimant</u> should have used a medical expert." (Dkt. 15, Pg. ID 1182) (emphasis supplied). In order to make sense of plaintiff's argument, the Court assumes that references to "claimant" in the quoted passage, are actually meant to refer to the ALJ.

impairment. He claims that her failure to address the referenced impairments suggests that she needed the services of a medical expert. And, her failure to use a medical expert when one was readily available from the Agency's roster constitutes an abuse of discretion that resulted in prejudice to the claimant. Plaintiff also highlights the fact that the original ALJ decision was partially favorable as to the SSI part of the concurrent application finding claimant disabled as of August 12, 2012; whereas the most recent ALJ decision found claimant not disabled at all. Plaintiff posits that the ALJ's failure to consider several medically determinable impairments could explain this incongruous result.

The Commissioner urges the Court to reject plaintiff's argument that an additional medical expert should have been retained for two reasons. First, according to the Commissioner, plaintiff waived that argument by failing to raise it at the administrative level. Second, plaintiff's argument ignores the fact that the record before the ALJ included opinions submitted by three separate medical experts. (Tr. 141-50, 1048-53, 1054-69). The Commissioner points out, in support of the waiver argument, that although plaintiff was represented by an attorney who appeared in person before the Agency on three separate occasions (Tr. 62, 95, 136) and submitted three separate briefs to the Agency (Tr. 418-20, 421-30, 444-449), that attorney never asked the Agency to retain an opinion from a fourth medical expert. Thus, the Commissioner maintains that plaintiff has waived any argument

about a fourth medical expert, citing *Maloney v. Comm'r of Soc. Sec.*, 2012 WL 1676683, at **5 (6th Cir. May 15, 2012).

Second, plaintiff's argument that the ALJ "improperly relied on her layman knowledge" and "play[ed] doctor" does not account for the fact that the record before the ALJ included opinions from three separate medical experts, including (1) a State agency physician who reviewed the evidence, conducted a function-by-function analysis of plaintiff's abilities, and provided an opinion about plaintiff's limitations (Tr. 141-50); (2) a consultative ophthalmologist retained by the Agency to examine plaintiff's visual impairment, then provide an opinion about his visual limitations (Tr. 1048-53); and (3) a consultative physician retained by the Agency to examine plaintiff, then provide an opinion about his physical limitations (including his visual limitations) (Tr. 1054-69). The Commissioner points out that the ALJ explicitly addressed the opinions provided by all three of those medical experts (Tr. 20-22) and plaintiff does not challenge the ALJ's evaluation of those opinions as reversible error. Further, the ALJ adopted many of the limitations contained in those opinions, and gave plaintiff the benefit of the doubt by including limitations in the RFC finding that exceeded the limitations listed by those medical experts (compare Tr. 15 with Tr. 141-50, 1048-53, 1054-69).

Additionally, the Commissioner points out that the regulations give adjudicators broad discretion to decide whether to spend public funds to retain a

medical expert. Although plaintiff asserts that the ALJ "abused [that] discretion," he does not cite any case in which a court has remanded on facts similar to the instant facts. The Commissioner also says that plaintiff fails to make any argument that his condition changed in any material way during the few months that elapsed between (1) the dates on which plaintiff was examined by both a consultative physician and a consultative ophthalmologist (Tr. 1048-53, Tr. 1054-69) and (2) the date on which the ALJ issued the decision. (Tr. 25).

The Commissioner urges the Court to reject plaintiff's argument regarding the "incongruous results" between the first and second ALJ decisions because it does not account for either the framework or the record. With respect to the record, the Commissioner points out that the second decision is based, in part, on two new opinions that two separate medical experts provided after the first decision was issued. (Collectively, "New Opinion Evidence") (Tr. 25, 56, 1048-53, 1054-69). And, as to the administrative framework, the only reason that plaintiff appealed the first decision to the Appeals Council was that he hoped the Agency would vacate the first decision and issue a new and materially different decision. Consequently, the Commissioner contends that plaintiff should not be heard to complain when the Agency did just that. Indeed, there would be no reason to vacate and remand any administrative decision unless the agency had the discretion to issue a new decision on remand that was materially different from the

vacated decision.  Going further, the Commissioner observes that even if the second decision had not been based in part on the new opinion evidence, the ALJ still would have had a "zone of choice" within which she would have been entitled to evaluate the same evidence that was before first ALJ and issue a decision that was materially different from the first.

Finally, it is unclear to the Commissioner why plaintiff asserts that "a medical expert would be appropriate because [Plaintiff] alleges a remote onset date of June 5, 2005."  The Commissioner notes, however, that the record contains extensive evidence that is remote from the time when the ALJ issued the decision, some of which predates the alleged onset date (Tr. 450-72, 473-93, 494-513, 514-615, 616-649, 650-671, 672-682, 683-695, 696-727, 755-847); the State agency physician accounted for that remote evidence when he provided his opinion (Tr. 141-50); and the ALJ explicitly evaluated the State agency opinion (Tr. 21).  Thus, according to the Commissioner, plaintiff does not advance and has therefore waived any argument that the ALJ's evaluation of the State agency opinion resulted in reversible error.

As an initial matter, the Commissioner's argument that plaintiff's medical expert claim is foreclosed because he failed to raise it before the ALJ or the Appeals Council level is easily dismissed.  As recently explained in *Austin v. Comm'r of Soc. Sec.*, 2017 WL 2644099, at *4 (W.D. Mich. June 20, 2017), the

claim of issue waiver is contrary to the Supreme Court's plurality decision in *Sims v. Apfel*, 530 U.S. 103, 112 (2000), which rejected issue exhaustion in Social Security appeals:

> [W]e hold that a judicially created issue-exhaustion requirement is inappropriate. Claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues.

*Sims*, 530 U.S. at 112. "The Council, not the claimant, has primary responsibility for identifying and developing the issues." *Id.*; *see also Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 463 (6th Cir. 2004) (acknowledging plurality decision in *Sims*.).

The Court's rejection of the Commissioner's issue waiver argument is a hollow victory for plaintiff however, as each of his claims of error nevertheless fail. Plaintiff has not provided any legal or factual basis for the notion that the Commissioner was required to hire yet a fourth medical expert to evaluate his claim. Indeed, to the contrary, the ALJ's failure to request another medical assessment of plaintiff's abilities presents no error. "While an ALJ 'has broad latitude in ordering a consultative examination,' *Diaz v. Secretary of Health and Human Services*, 898 F.2d 774, 778 (10th Cir. 1990), the ALJ is not required to do so 'unless the record establishes that such an examination is necessary to enable the [ALJ] to make the disability decision,'" *Landsaw v. Secretary of Health &*

*Human Services*, 803 F.2d 211, 214 (6th Cir. 1986) (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1997); *see also Culp v. Comm'r of Soc. Sec.*, 2012 WL 4490746, at *4 (W.D. Mich. June 15, 2012), report and recommendation adopted sub nom. *Culp v. Sec'y of Health & Human Servs.*, 2012 WL 4490740 (W.D. Mich. Sept. 28, 2012), aff'd sub nom. *Culp v. Comm'r of Soc. Sec.*, 529 Fed. Appx. 750 (6th Cir. 2013). "We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim." 20 C.F.R. § 404.1519a. As the Commissioner points out, not one, but three expert opinions were obtained in this matter. First, state agency physician Dr. Mahmood reviewed the evidence, conducted a function-by-function analysis of plaintiff's abilities, and provided an opinion about plaintiff's limitations. (Tr. 141-50). Next, the Agency retained a consultative ophthalmologist to examine plaintiff's visual impairment and provide an opinion about his visual limitations. (Tr. 1048-53). Finally, the Agency retained a consultative physician (Dr. Shelby-Lane) to examine plaintiff and provide an opinion about his physical limitations (including his visual limitations). (Tr. 1054-69). Importantly, Dr. Shelby-Lane had the benefit of plaintiff's longitudinal medical records as well as an in-person examination before issuing her opinions. Plaintiff neither explains nor supports his claim that yet another consultative examinations was required, and also fails to

illuminate how or why Dr. Shelby-Lane's review and examination failed to account for plaintiff's remote onset date or remote DLI.

While the ALJ did not adopt all of Dr. Shelby-Lane's restrictions and limitations, she was not required to do so. In arriving at plaintiff's RFC, the Commissioner must base the decision on "all of the relevant medical and other evidence." 20 C.F.R. 416.945. The statute does not require that the Commissioner rely on a physician's RFC or any other particular piece of evidence. Indeed, the Sixth Circuit has opined, in at least one unpublished decision that, "[t]o require the ALJ to base her RFC finding on a physician's opinion, would, in effect confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." *Rudd v. Comm'r of Soc. Sec.*, 531 Fed. Appx. 719, 728 (6th Cir. 2013).[6]

_____

[6] The undersigned acknowledges a separate line of cases that suggests a medical opinion on a claimant's RFC may be appropriate when it appears that the ALJ has engaged in the prohibited act of "playing doctor" by interpreting raw medical data. *See e.g. Isaacs v. Astrue,* 2009 WL 3672060 at *10 (S.D. Ohio Nov. 4, 2009); *Deskin v. Comm'r of Soc. Sec.* 605 F.Supp.2d 908, 912 (N.D. Ohio 2008); and *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). While plaintiff suggests that the ALJ here "played doctor," those cases involve circumstances where there was no medical opinion connecting the raw medical data to the ALJ's RFC in functional terms. The record here contains such medical opinions and the ALJ expressly relied on them in formulating his RFC. Plaintiff has not made the case that the ALJ formulated his RFC "without reference to any medically determined RFC opinion bridging the raw medical data to specific functional limitations." *Isaacs*, at *11.

Plaintiff has simply not pointed to any record evidence which would undermine a finding of substantial evidence to support the limitations assessed by the ALJ.

## IV.    CONCLUSION

For the reasons set forth above, the Court **DENIES** plaintiff's motion for summary judgment, **GRANTS** defendant's motion for summary judgment, and **AFFIRMS** the findings of the Commissioner.

**IT IS SO ORDERED**.

Date: March 30, 2018                    s/Stephanie Dawkins Davis
                                         Stephanie Dawkins Davis
                                         United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on March 30, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov